UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:11-cv-09992-CAS(AGRx) | Date | December 8, 2014 |
|---|---|---|---|
| Title | LUIGI AMBROSE ET AL. V. AVIS RENT A CAR SYSTEMS INC. ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Anne Kielwasser | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Christina Humphrey<br>Stanley Saltzman | Julie Patterson<br>Glenn Plattner<br>Jonathan Solish |

**Proceedings:** PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (dkt. 88, filed October 29, 2014)

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (dkt. 89, filed October 29, 2014)

## I.  INTRODUCTION

Plaintiff Tammy Dotson, joined by twenty-one other individuals and twenty-two corporations, initially filed this complaint in Los Angeles County Superior Court on October 14, 2011, against defendants Avis Rent a Car System, Inc. ("Avis"), Budget Rent a Car System, Inc. ("Budget"), Avis Budget Group, Inc. ("Avis Budget"), and Does 1-100 (collectively, "defendants").  Defendants removed the action to this Court on December 1, 2011.

After significant motion practice, twenty-seven plaintiffs ultimately filed the operative sixth amended complaint ("SAC") on October 11, 2012.  The SAC alleges ten claims for relief: (1) declaratory relief; (2) failure to pay overtime compensation in violation of California Labor Code § 1194; (3) failure to indemnify and illegal wage deductions in violation of California Labor Code §§ 226 and 2802; (4) failure to compensate for meal and rest breaks in violation of California Labor Code §§ 226.7, 512, and 558; (5) failure to pay wages upon termination in violation of California Labor Code §§ 301-203; (6) failure to provide an accurate, itemized wage statement in violation of California Labor Code § 226; (7) fraud and deceit: concealment; (8) violation of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:11-cv-09992-CAS(AGRx) | Date | December 8, 2014 |
| Title | LUIGI AMBROSE ET AL. V. AVIS RENT A CAR SYSTEMS INC. ET AL. | | |

California Business and Professions Code § 17200, *et seq.* ("UCL"); (9) accounting; (10) remedies under the Private Attorneys General Act of 2004 ("PAGA"), California Labor Code § 2698 *et seq.*

On March 10, 2014, the parties informed the Court that twenty-six of the twenty-seven plaintiffs had voluntarily dismissed the action following successful, private mediation. Dkt. 80. Thus, the only claims pending before this Court are those of plaintiff Tammy Dotson; specifically, Dotson alleges claims 1-6, 8, and 9 against defendants.

On October 29, 2014, plaintiff Dotson filed a motion for partial summary judgment, dkt. 88, which defendants opposed on November 19, 2014, dkt. 94. Defendants also filed a motion for summary judgment on October 29, 2014, dkt. 89, which was likewise opposed by plaintiff on November 19, 2014, dkt. 95.[1] The Court held a hearing on December 8, 2014. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

This case involves the proper classification of a business relationship that fits neatly within neither the contours of the franchisee-franchisor framework, nor the employee-employer framework. Except where noted, the following relevant facts are not in dispute.

Avis Budget is an international car rental company that owns both Avis and Budget. Joint Separate Statement of Facts ("SS") No. 1. In California, Avis Budget rents cars from three different types of facilities: (i) corporate-owned locations operated by workers employed by Avis Budget; (ii) franchises operated under franchise agreements; (iii) and locations operating under independent operator agreements. Id. No. 131. There

---

[1] The parties agreed not to file reply briefs. See Joint Not. Mot. Summ. J. Additionally, defendants filed evidentiary objections to the declaration of Tammy Dotson. Dkt. 94-1. Because the Court does not rely on the objected-to portions of Dotson's declaration, the Court OVERRULES these objections as moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:11-cv-09992-CAS(AGRx) | Date | December 8, 2014 |
| Title | LUIGI AMBROSE ET AL. V. AVIS RENT A CAR SYSTEMS INC. ET AL. | | |

are currently 133 Avis Budget locations operating under independent operator agreements in California. Id. No. 2.

In 2006, plaintiff and her husband, Ken Dotson, contacted Budget seeking to become agency operators.[2] Id. Nos. 15-17. In September 2006, Dotson completed a 60-90 day training course offered by Budget, which was mandatory for new agency operators who lacked prior rental car experience. Id. No. 22. After completing the training, plaintiff was offered an independent operator location in Riverside, California ("the Riverside Location"), which had previously been operated as a corporate location. Id. No. 23. As a prerequisite to entering into an Independent Operator Agreement ("OA") with Budget, the Dotsons filed articles of organization to create a limited liability company by the name of Visions Unlimited, LLC ("Visions"). Id. No. 187. Ken Dotson was named as Visions' President, and Tammy Dotson was named as Visions' Vice President. Id. No. 188.

On November 1, 2006, Visions entered into an OA with Budget, which Tammy Dotson executed as Visions' Chief Financial Officer. Id. No. 190. The OA identifies Visions as the "Operator," and expressly provides that the "Operator is an Independent Contractor." Joint App., Ex. 1 (the OA) at 1. The OA also states that the Operator "is not a franchisee," and provides that the Operator has not "paid [Budget] a fee for the right to enter into this Agreement." Id. Further, the OA incorporates by reference the Budget Agency Operator Guidelines ("the Guidelines").

Pursuant to the OA, Visions was required to hire employees to staff the Riverside Location, and was "solely responsible for all aspects of their employment including compensation, training, staffing and hours/days worked." OA at 5. The OA also required Visions to obtain workers' compensation insurance for its employees, and to obtain liability insurance for the Riverside Location itself. OA at 10. The employees hired by Visions were required to be "uniformed, competent and trained . . . [and] capable." OA at 8. Moreover, Visions was required to staff the Riverside Location with a full-time business manager "who is acceptable to [Budget]." Id. Additionally, Visions

---

[2] The Dotsons have since divorced, and Ken Dotson is not a party to this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:11-cv-09992-CAS(AGRx) | Date | December 8, 2014 |
| Title | LUIGI AMBROSE ET AL. V. AVIS RENT A CAR SYSTEMS INC. ET AL. | | |

was required to conduct a driver's license check on all employees authorized to use a Budget vehicle.  Id.

In practice, Visions hired at least twenty-three employees to staff the Riverside Location between November 2006 and January 2011, when Budget terminated the OA. SS No. 217.  Dotson determined the work hours for Visions' employees, arranged their schedules to avoid paying overtime, set their rate of pay, and contracted with a third-party to handle payroll.  Id. Nos. 220, 225, 226.  Although Budget policy forbids hiring known felons as corporate employees, Dotson hired two known felons to staff the Riverside Location without objection from Budget.  Id. Nos. 209, 228.  Further, with the exception of one corporate employee retained by the Dotsons, Budget did not speak with any of Visions' employees before they were hired.  Id. No. 208.  While Budget asserts that Dotson "decided who would be hired and fired at her Location," Dotson asserts that Budget prevented her from hiring an individual who had been accused of theft at another Budget location.  Id. No. 227.

The OA also required Visions to "honor Budget standards" and follow the Agency Operator Guidelines.  For example, Visions was obligated to follow Budget rental procedures, comply with Budget's credit qualification practices, accept confirmed car rental reservations, use Budget-approved forms, and participate in Budget's Emergency Road Service Program.  Id. Nos. 89, 93, 94, 96, 97.  Further, the OA obligated Visions to pay taxes and cover "the cost of all office supplies and operational expenses at the Location, including . . . stationery, postage, photocopy paper, courier and/or shipping charges, and janitorial services . . . ."  Id. No. 202.

While operating the Riverside Location, Tammy Dotson engaged in marketing efforts that ultimately brought in new rental business from at least three other companies. Id. No. 230.  However, Dotson complains that Budget was not always willing to accept the business terms proposed by potential customers solicited by Dotson.  For example, Dotson asserts that she submitted a bid to provide a supermarket chain with six cars on a monthly basis, but that Budget "did not approve this proposed corporate rental because it determined that too many miles would be put on the cars."  SS No. 64.  Although defendants assert that they cannot verify whether they ever denied approval of such deals, they do not deny that they had the power to do so, instead asserting that, "[i]t would be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:11-cv-09992-CAS(AGRx) | Date | December 8, 2014 |
| Title | LUIGI AMBROSE ET AL. V. AVIS RENT A CAR SYSTEMS INC. ET AL. | | |

unfair to have a trier of fact second guess Budget's economic decisions in the course of deciding whether Mrs. Dotson was an employee." Defs' Opp'n Summ. J. at 4.

Budget also maintained certain rights and obligations pursuant to the OA. Among other things, Budget owned and insured the fleet of rental vehicles at the Riverside Location, determined which vehicle groups would be made available, supplied Visions' business license, leased the Riverside facility in its own name, paid for the facilities' utilities, and provided uniforms to Dotson and staff at the Riverside Location. Id. Nos. 70, 158-164, 171. Budget also supplied the Riverside Location's furniture and, with the exception of a laptop computer purchased by the Dotsons, supplied general office equipment such as computers, printers, and telephones. Id. Nos. 169-170. Additionally, Budget provided the Riverside Location with the "Wizard" software platform, Budget's uniform system for processing rental reservations. Id. Nos. 142-143. The Wizard system allowed Budget to maintain centralized control of business processes, including "fleet acquisition and logistics, sales to corporate accounts, and determination of rental rates." Id. No. 144.

Budget also set the rates for all rentals booked through the Budget website or phone lines. Id. No. 141. With regard to walk-up rentals, although Budget disputes that it ever set minimum rental rates, the undisputed evidence indicates that Budget did indeed maintain such minimum rates. See, e.g., Joint App., Ex. 21 Deposition of Diane Hagner-Gibson 133:12-134:7 (affirming that there is "some minimum" rate set by Budget that agency operators are required to charge for walk-up rentals). On average, the amount of walk-up business as the Riverside Location fluctuated between 12-28% of all monthly rentals. SS No. 66.

Pursuant to the OA, a Territory Performance Manager ("TPM"), employed directly by Budget, conducted periodic inspections of the Riverside Location and completed an "Agency Contact Report," which evaluated vehicle quality, facility image, uniforms, customer service, and whether Visions had conducted a "rate shop" of local competitors. Id. No. 119. The TPM also established business goals that were noted and tracked on Agency Contact Reports. Id. No. 120.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:11-cv-09992-CAS(AGRx) | Date | December 8, 2014 |
| Title | LUIGI AMBROSE ET AL. V. AVIS RENT A CAR SYSTEMS INC. ET AL. | | |

The terms of the OA further provide that the Riverside Location is to be kept open for such "minimum hours" as the parties "mutually agreed." Id. No. 200. Once these hours were set, they could not be changed without Budget's express approval. Id. No. 82.

Pursuant to the OA, Visions received 12% of the net total revenue derived from each rental, and 55% of revenue derived from the on-site refueling service. Id. No. 239. All revenue went to Budget first, which then calculated the commission owed to Visions and directly deposited commission checks into Visions' bank account. Id. Nos. 152-154, 156.

Although the OA does not have an expiration date, it contains termination provisions. Id. No. 151. The OA grants both parties the right to terminate without cause upon at least 90 days' prior written notice. OA at 14. With 30 days' notice, the OA permits Budget to terminate the contract for "good cause," such as Visions' failure to rent vehicles in accordance with Budget's policies. OA at 13. Further, the OA permits Budget to terminate the contract immediately for good cause if, *inter alia*, Visions or its employees "engage[d] in a pattern or practice of discrimination," Visions abandoned the Riverside Location, or Visions attempted to assign any rights under the OA. Id. at 12-13.

Over the course of the four and a half years that Visions operated the Riverside Location, Visions received two notices from Budget concerning perceived shortcomings. The first, a letter dated June 1, 2010, noted that the Riverside Location had experienced a drop in counter sales of optional services and advised that "[c]ontinued poor performance . . . could force Avis Budget Group to exercise its rights signed by both parties in the operators agreement." Id. No. 118. That same month, plaintiff also received a termination warning when an employee at the Riverside Location overrode a debit card override warning. Id. No. 117.

Exercising its right to terminate the contract without cause with at least 90 days' notice, Budget terminated the OA effective January 31, 2011. Id. No. 54. In consideration for the termination of the OA, Visions received $17,000, an amount negotiated and agreed to by both plaintiff and Budget. Id. No. 55. Budget estimated that this amount would cover three months' worth of commissions at the Riverside Location. Id. No. 56. The Riverside Location was subsequently transferred to another agency operator, who Budget believed would "save the company a lot of money." Id. No. 53.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:11-cv-09992-CAS(AGRx) | Date | December 8, 2014 |
|---|---|---|---|
| Title | LUIGI AMBROSE ET AL. V. AVIS RENT A CAR SYSTEMS INC. ET AL. | | |

Although the relevant facts are largely undisputed, the parties' dispute the legal effect of these facts in defining the nature of the relationship between plaintiff and defendants.

### III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential element of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:11-cv-09992-CAS(AGRx) | Date | December 8, 2014 |
|---|---|---|---|
| Title | LUIGI AMBROSE ET AL. V. AVIS RENT A CAR SYSTEMS INC. ET AL. | | |

## IV. ANALYSIS

Plaintiff moves for summary judgment on her first claim for declaratory relief, asking the Court to decide whether she was an employee of defendants, as opposed to an independent contractor. Plaintiff also moves for summary judgment on defendants' forty-sixth affirmative defense—i.e. the "commission exemption." Defendants move for summary judgment as to plaintiff's entire SAC on the grounds that the undisputed evidence demonstrates that plaintiff was not an employee of Budget.

### A. Whether Plaintiff Was an Employee or an Independent Contractor

#### 1. Franchise Relationships

As a preliminary matter, defendants frame the employment issue as follows: "Are the brand-related controls imposed by a business format license upon a licensee the kind of controls that create an employment relationship between the licensor and the licensee's employees?" Defs' Mot. Summ. J. at 1. Defendants direct the Court to the recent decision of Patterson v. Domino's Pizza, LLC, 60 Cal. 4th 474 (2014), where the California Supreme Court addressed whether "a franchisor stand[s] in an employment or agency relationship with the franchisee and its employees for purposes of holding it vicariously liable for workplace injuries allegedly inflicted by one employee of a franchisee while supervising another employee of the franchisee[.]" Id. at 477. In reversing the Court of Appeal and finding that the franchisor could not be held vicariously liable for the alleged tort, the Patterson court held:

> The imposition and enforcement of a uniform marketing and operational plan cannot *automatically* saddle the franchisor with responsibility for employees of the franchisee who injure each other on the job. The contract-based operational division that otherwise exists between the franchisor and the franchisee would be violated by holding the franchisor accountable for misdeeds committed by employees who are under the direct supervision of the franchisee, and over whom the franchisor has no contractual or operational control. It follows that potential liability on the theories pled here requires that the franchisor exhibit the traditionally understood characteristics of an "employer" or "principal;" i.e., it has retained or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:11-cv-09992-CAS(AGRx) | Date | December 8, 2014 |
| Title | LUIGI AMBROSE ET AL. V. AVIS RENT A CAR SYSTEMS INC. ET AL. | | |

assumed a general right of control over factors such as hiring, direction, supervision, discipline, discharge, and relevant day-to-day aspects of the workplace behavior of the franchisee's employees. [citation omitted].

Id. at 478 (emphasis in original). In so holding, the court emphasized the economic realities of franchising, stating that "any other guiding principle would disrupt the franchise relationship." Id. at 498. The court further emphasized the mutual benefits conferred by this "business format arrangement," in which "[t]he goal—which benefits both parties to the contract—is to build and keep customer trust by ensuring consistency and uniformity in the quality of goods and services, the dress of franchise employees, and the design of the stores themselves." Id. at 490.

Defendants also direct the Court to Juarez v. Jani-King of California, Inc., 2012 WL 177564 (N.D. Cal. Jan. 23, 2012), where a court in this circuit rejected plaintiff franchisees' contention that the franchisor's "common policies and practices so tightly controlled the franchisees' actions as to create an employer-employee relationship between [the franchisor] and Plaintiffs." Id. at *4. In so doing, the Juarez court stated that the presumption of employee status did not apply in the franchise context; rather, "[a] franchisee must show that the franchisor exercised 'control beyond that necessary to protect and maintain its interest in its trademark, trade name, and good will' to establish a prima facie case of an employer-employee relationship." Id. (quoting Cislaw v. Southland Corp., 4 Cal. App. 4th 1284, 1296 (1992)).

In short, defendants contend that operating agents like plaintiff are functionally indistinguishable from franchisees and should be treated as such. Defs' Mot. Summ. J. at 16. Defendants argue that Patterson's deference to the franchise business format, coupled with Juarez's statement that the presumption of employment does not apply in the franchise context, "suggest[s] that the test for employment status must continue to evolve to accommodate the business format license." Defs' Summ. J. at 16.[3] Accordingly,

---

[3] Plaintiff argues that there is no such thing as a "business format license," since defendants never granted plaintiff any sort of license, and Budget itself was forbidden from granting such sub-licenses. Although plaintiff is technically correct, the Court reads defendants' use of the phrase "business format license" as a proxy for the relationship

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:11-cv-09992-CAS(AGRx) | Date | December 8, 2014 |
| Title | LUIGI AMBROSE ET AL. V. AVIS RENT A CAR SYSTEMS INC. ET AL. | | |

defendants urge this Court to extend Patterson's analysis to the instant case in order to avoid the "false positives" that might result if the Court were to apply the common law test for an employment relationship. Id. at 15-17.

In many respects, plaintiff's relationship with defendants resembles that of a franchisee. Under California's Franchise Investment Law, a "franchise" is a contract or agreement characterized by three elements:

> (1) A franchisee is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor; and
>
> (2) The operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising or other commercial symbol designating the franchisor or its affiliate; and
>
> (3) The franchisee is required to pay, directly or indirectly, a franchise fee.

Cal. Corp. Code § 31005(a)(1)-(3). The undisputed facts indicate that—but for the requirement of a franchise fee—the arrangement created pursuant to the OA would have been categorized as a "franchise" under California law.

In opposition, plaintiff contends that defendants are engaged in a "sleight of hand . . . attempt[ing] to re-cast this issue into something it is not." Pl's Opp'n Summ. J. at 1. Plaintiff argues that the Patterson and Juarez cases are distinguishable from the instant case, since here the parties expressly agreed that they were not entering into a franchise relationship and plaintiff did not pay a franchise fee. Id. at 2. Plaintiff directs the Court's attention to an unpublished Ninth Circuit decision, Adees Corp. v. Avis Rent A Car Sys., Inc., 157 F. App'x 2, (9th Cir. 2005), where the court affirmed the district court's determination that a similar OA did not create a franchise relationship in the absence of a

---

created by the OA, which—semantics aside—clearly appears to have created some iteration of the "business format arrangement" contemplated by the Patterson Court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:11-cv-09992-CAS(AGRx) | Date | December 8, 2014 |
| Title | LUIGI AMBROSE ET AL. V. AVIS RENT A CAR SYSTEMS INC. ET AL. | | |

franchise fee. Moreover, plaintiff argues that she should not be treated as a franchisee where she "does not have the rights and remedies a 'franchisee' would have in relation to its 'franchisor.'" Id. at 3. Indeed, in Adees Corp., the plaintiff sought franchisee status in order to challenge Avis' termination of his OA without good cause—an act proscribed by the California Franchise Relations Act. 157 F. App'x at 3. Thus, according to plaintiff, the franchise cases are simply "irrelevant to the issue before this Court—whether or not Plaintiff was an employee or an independent contractor." Id.

Although defendants' arguments are persuasive—and the California Supreme Court may indeed decide to extend the reasoning of Patterson to the quasi-franchise relationship presently before this Court—the Court declines to adopt the franchise-centered test applied in both Patterson and Juarez. It is undisputed that plaintiff did not pay a franchise fee. Moreover, plaintiff persuasively argues that, were she a franchisee, she would enjoy rights and remedies not currently afforded to her. In sum, while the payment of a franchise fee appears to be a mere formality, it implicates the substantive rights of the parties to the contract and the Court therefore will not treat plaintiff as a franchisee here.

Thus, the question squarely before this Court is whether—applying the existing framework of non-franchise, California employment law—plaintiff was an employee of defendants when she operated the Riverside Location.

### 2. Common Law Right-to-Control Test

Under California law, there appear to be at least two tests for whether an individual is an employee. The first originates in the common law, while the second is derived from Industrial Welfare Commission ("IWC") wage orders.[4] The Court follows the recent instruction of the California Supreme Court in Ayala v. Antelope Valley Newspapers, Inc., 59 Cal. 4th 522 (2014), where the court applied the common law framework to a host of wage an hour claims and left "for another day the question what application, if

---

[4] The IWC is the state agency empowered to regulate wages, hours, and working conditions through wage orders governing specific industries and occupations. Dynamex Operations West, Inc. v. Superior Court, 230 Cal. App. 4th 718, 722 n.1 (2014).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'

| Case No. | 2:11-cv-09992-CAS(AGRx) | Date | December 8, 2014 |
|---|---|---|---|
| Title | LUIGI AMBROSE ET AL. V. AVIS RENT A CAR SYSTEMS INC. ET AL. | | |

any, the wage order tests for employee status might have to wage and hour claims such as these . . . ." Id. at 531.[5]

"'The principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired.'" Alexander v. FedEx Ground Package Sys., Inc., 765 F.3d 981, 988 (9th Cir. 2014) (quoting S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations, 48 Cal. 3d 341, 404 (1989)). "What matters is whether the hirer 'retains all *necessary* control' over its operations." Ayala, 59 Cal. 4th at 531 (quoting Borello, 48 Cal. 3d at 357)(emphasis in original).

Although the primary measure of whether a common law employer-employee relationship exists is the extent of the hirer's right to control the hiree's work, California courts also consider secondary factors drawn from the Second and Third Restatements of Agency. Id. at 532. These factors are:

> (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee."

Id. (quoting Borello, 48 Cal. 3d at 351); accord Alexander, 765 F.3d at 989. "Generally, . . . the individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations." Borello, 48 Cal.

---

[5] Plaintiff's claims overlap substantially with the claims at issue in Ayala. Like Dotson, the Ayala plaintiffs asserted claims for, *inter alia*, violations of Cal. Labor Code § 226, 226.7, 512, 1194, 2802. 59 Cal. 4th at 529.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:11-cv-09992-CAS(AGRx) | Date | December 8, 2014 |
|---|---|---|---|
| Title | LUIGI AMBROSE ET AL. V. AVIS RENT A CAR SYSTEMS INC. ET AL. | | |

3d at 351 (quoting another source). "Each service arrangement must be evaluated on its facts, and the dispositive circumstances may vary from case to case." Id. at 354.

Finally, "[t]he determination of employee or independent-contractor status is one of fact if dependent upon the resolution of disputed evidence or inferences." Borello, 48 Cal. 3d at 349. However, "[i]f the evidence is undisputed, the question becomes one of law." Id.

### a. "Manner and Means"

Plaintiff argues that Budget retained all "necessary control" over plaintiff "through the written agreement, the agency operator guidelines, and the 'Wizard' system." Pl's Mot. Summ. J. at 15. Specifically, she asserts that Budget's retention of necessary control is evidenced by Budget's "extensive control of the vehicle inventory, rental rates, the rental procedures, the hours of operation, and the lease terms." Id. at 5.

Plaintiff contends that this case is much like Alexander v. FedEx Ground Package Sys., Inc., 765 F.3d 981(9th Cir. 2014). Id. at 16-17. In Alexander, the Ninth Circuit found that truck drivers, who had been hired by FedEx pursuant to contracts that described the drivers as "independent contractors," were actually employees, since the contracts and FedEx's policies and procedures "unambiguously allow[ed] FedEx to exercise a great deal of control over the manner in which its drivers do their jobs." 765 F.3d at 989.

In reaching its conclusion, the Alexander court identified several indicia of control. First, FedEx maintained "detailed appearance requirements" for their drivers, requiring them to be "clean shaven, hair neat and trimmed, [and] free of body odor." Id. Second, the court found that "FedEx can and does control the times its drivers can work." Id. Although the contracts signed by drivers technically did not allow FedEx to "set specific working hours down to the last minute," the court reasoned that "FedEx structures drivers' workloads so that they have to work 9.5 to 11 hours every working day." Id. at 990. Specifically, FedEx managers could adjust drivers' workloads to ensure that drivers always had between 9.5 and 11 hours of work to do. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'

| Case No. | 2:11-cv-09992-CAS(AGRx) | Date | December 8, 2014 |
|---|---|---|---|
| Title | LUIGI AMBROSE ET AL. V. AVIS RENT A CAR SYSTEMS INC. ET AL. | | |

    Further, the court rejected FedEx's argument that "because drivers [could] hire helpers to do their work for them, they are free to complete a full day's work in less than 9.5 hours." Id. The court noted that the drivers' contracts only permitted them to hire assistants who were "fully trained" and "conformed fully" with the terms of the drivers' contracts, and that any replacement driver had to be "acceptable to FedEx." Id. at 985-86. Moreover, nothing in the drivers' contracts "limit[ed] FedEx's discretion to . . . decide whether a replacement driver is 'acceptable.'" Id. at 994. Ultimately, the court concluded that "[w]hether FedEx ever exercise[d] its right of refusal is irrelevant; what matters is that the right exists." Id. (Citing Ayala, 59 Cal. 4th at 535) ("It is not essential that the right of control be exercised or that there be actual supervision of the work of the agent.").

    Third, the court reasoned that FedEx "can and does control aspects of how and when drivers deliver their packages." Id. at 990. Although FedEx asserted that it did not require drivers to follow specific routes or to deliver packages in a specific order, "FedEx's lack of control over some parts of its drivers' jobs does not counteract the extensive control it does exercise." Id.

    Finally, the Alexander court emphasized that while the drivers' contracts labeled them independent contractors,"[t]he label placed by the parties on their relationship is not dispositive, and subterfuges are not countenanced." 765 F.3d at 989 (quoting Borello, 48 Cal. 3d at 349).

    Budget counters that Alexander is distinguishable because the record demonstrates that Budget did not retain "an unchecked power to bar the hiring of helpers due to their 'fashion choices and grooming,'" and did not functionally dictate plaintiff's daily work schedule. Defs' Opp'n Summ. J. at 7-9. Budget further contends that the other controls complained of by plaintiff—such as Budget's alleged unwillingness to accept business deals that would have required the availability of certain vehicles at all times—are standard commercial controls, exercised consistently with the terms of plaintiff's bargained-for OA. Id. at 3-4. Moreover, Budget asserts that, unlike in Alexander, the totality of the circumstances indicates that it is not engaged in a subterfuge designed to deny plaintiff certain employment benefits. Defendants also direct the Court to two non-binding decisions in which U.S. District Courts found that plaintiffs operating rental locations pursuant to OAs were not employees of Avis, Hannon v. Avis Rent A Car Sys.,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:11-cv-09992-CAS(AGRx) | Date | December 8, 2014 |
|---|---|---|---|
| Title | LUIGI AMBROSE ET AL. V. AVIS RENT A CAR SYSTEMS INC. ET AL. | | |

Inc., 107 F. Supp. 2d 1256 (D. Mont. 2000) and Laney v. Avis Rent A Car System, Inc., et al., Case No. H-10-01957 (S.D. Tex. Oct. 17, 2011), cert denied, 133 S. Ct. 1605 (2013), as well as two instances where the California Unemployment Insurance Appeals Board found the same, Cepeda v. Avis Car Rental, case 319170, and Pernett v. Avis Rent A Car, case AP-54279.

      The Court concludes that competing inferences may be drawn concerning whether defendants retained "all necessary control" over plaintiff's work. As in Alexander, the OA unambiguously requires plaintiff to staff the Riverside Location with individuals who are "uniformed, competent and trained . . . [and] capable," and also requires a full-time business manager who is "acceptable" to Budget. As explained by the California Supreme Court in Ayala and applied by the Ninth Circuit in Alexander, whether Budget ever exercised these approval rights is irrelevant to the right to control analysis. Indeed, the Ayala court found that the trial court had erroneously denied class certification precisely because it "rejected certification based not on differences in [defendant's] right to exercise control, but on variations in how that right was exercised." 59 Cal. 4th at 528. In light of this nuance of California law, the non-binding authorities relied upon by Budget are not relevant to the control analysis. See, e.g., Hannon, 107 F. Supp. 2d at 1259 (applying federal common law agency approach, which emphasizes actual exercise of control, not right to exercise control); Laney, Case No. H-10-01957 (S.D. Tex. Oct. 17, 2011) (applying federal law to find plaintiff was an independent contractor for purposes of Title VII, and rejecting state-law tests); Cepeda v. Avis Car Rental, case 319170 (purporting to apply California's right to control test but focusing instead on the exercise of that control).

      However, as defendants note, the OA unambiguously does not require plaintiff to work specific hours and, unlike FedEx, the evidence does not suggest that defendants functionally confined plaintiff to a specific work schedule. Instead, the undisputed evidence indicates that plaintiff generally staffed the Riverside Location with four or five individuals at any given time. SS No. 216. Even if, as plaintiff maintains, she worked more than 55 hours per week, there is no evidence to suggest that plaintiff was required by Budget to do so. Budget's expectation that plaintiff and her husband "work the location," Dotson Decl. 1:15-17, does not reasonably raise an inference that Budget controlled plaintiff's hours.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:11-cv-09992-CAS(AGRx) | Date | December 8, 2014 |
|---|---|---|---|
| Title | LUIGI AMBROSE ET AL. V. AVIS RENT A CAR SYSTEMS INC. ET AL. | | |

At hearing, plaintiff argued that defendants' lack of control over plaintiff's work hours cannot provide the factual basis for finding a lack of "all necessary control." In support, plaintiff directed the Court's attention to Borello, where the court found that plaintiff share farmers were employees of defendant grower, even though the share farmers could set their own hours. 48 Cal. 3d 341 at 347. The Court is not persuaded by plaintiff's argument. Although the grower's direct control over the share farmers' hours—or rather, lack thereof—was not dispositive of employee status in Borello, no where in Borello did the court suggest that control over hours could not serve as indicium of a putative employer's retention of "all necessary control." Indeed, the Ninth Circuit's emphasis on FedEx's control over its drivers' hours in Alexander—and the court's careful analysis of Borello—demonstrate that control over hours is indeed one indicator of a putative employer's retention of "all necessary control."

Moreover, as explained in Borello, "[e]ach service arrangement must be evaluated on its facts, and the dispositive circumstances may vary from case to case." 48 Cal. 3d at 354. As discussed above, the Court declines to adopt outright the test for control in franchisor-franchisee relationships identified in Patterson; nonetheless, a reasonable juror evaluating the instant service arrangement could determine that certain aspects of control complained of by plaintiff were simply part and parcel of the bargained for, quasi-franchise relationship created by the OA.

On these facts, a reasonable juror could find that defendants' right to control plaintiff's work rendered her either an employee or an independent contractor. In light of these competing inferences, this Court cannot conclude as a matter of law that defendants did or did not exercise "all necessary control" over plaintiff. See Borello, 48 Cal. 3d at 349 ("The determination of employee or independent-contractor status is one of fact if dependent upon the resolution of disputed evidence or inferences.").

       **b.**     **Secondary Factors**

Although no single factor is dispositive, the California Supreme Court has held that "[w]hether a common law employer-employee relationship exists turns foremost on the degree of a hirer's right to control how the end result is achieved." Ayala, 59 Cal. 4th at 528. In light of the Court's foregoing determination regarding the right to control, the Court does not address the relative weight, if any, to be given to the secondary factors.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'

| Case No. | 2:11-cv-09992-CAS(AGRx) | Date | December 8, 2014 |
|---|---|---|---|
| Title | LUIGI AMBROSE ET AL. V. AVIS RENT A CAR SYSTEMS INC. ET AL. | | |

    Accordingly, the Court DENIES both defendants' motion for summary judgment and plaintiff's motion for partial summary judgment, insofar as they are based on the issue of whether plaintiff was an employee.

### B. Defendants' Forty-Sixth Affirmative Defense: The Commission Exemption

    Plaintiff moves for summary judgment on defendants' forty-sixth affirmative defense, "the commission exemption." Specifically, defendants' answer asserts that "Plaintiffs' claims are barred, in whole or in part, to the extent that they are exempt from overtime compensation under the commission sales exemption." Dkt. 76 at ¶ 46.

    The parties agree that the applicability of this defense turns upon the applicable IWC Wage Order. Plaintiff asserts that Wage Order 9-2001 ("Wage Order 9"), which does not include a commission sales exemption, applies here. Pls' Mot. Summ. J. at 23. Wage Order 9, codified at 8 Cal. Code of Regs. § 11090, applies to "working conditions in the transportation industry" and defines "transportation industry" to include "any industry, business, or establishment operated for the purpose of conveying persons or property from one place to another . . . and also includes storing or warehousing of goods or property, and the repairing, parking, <u>rental</u>, maintenance, or cleaning <u>of vehicles</u>." § 11090 subd. 2(N) (emphasis added). Plaintiff further directs the Court to a pamphlet issued by the California Division of Labor Standards Enforcement ("DLSE") in 2013 entitled "Which IWC Order?" ("DLSE Pamphet"), which identifies "car rentals" as businesses covered by Wage Order 9. DLSE Pamphlet at 23.[6]

    Although defendants concede that Wage Order 9 lists vehicle rentals as a covered industry, defendants assert that Wage Order 7, which covers the "mercantile industry" and contains a commission sales exception, should nonetheless apply to plaintiff's claims. Defs' Opp'n Summ. J. at 20-21. According to defendants, since Wage Order 7

---

    [6] Plaintiff did not include the DLSE Pamphlet with her briefing. However, it is publicly available on the California Department of Industrial Relations' website. <u>See</u> http://www.dir.ca.gov/dlse/.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:11-cv-09992-CAS(AGRx) | Date | December 8, 2014 |
|---|---|---|---|
| Title | LUIGI AMBROSE ET AL. V. AVIS RENT A CAR SYSTEMS INC. ET AL. | | |

applies to automobile dealerships, see Keyes Motors, Inc. v. Div. of Labor Standards Enforcement, 197 Cal. App. 3d 557, 562 (1987), and such dealerships frequently lease vehicles, "there is no principled reason" for assuming that car rentals are subject to Wage Order 9. Id. at 21.

Whether or not there is a "principled reason" for applying Wage Order 9 to the car rental industry, the unambiguous language of the Order covers "rental . . . of vehicles." § 11090 subd. 2(N). Moreover, the DLSE Pamphlet explains that Wage Order 7 covers "Equipment rentals (except vehicles, see Order 9)." DLSE Pamphlet at 21; see also Keyes Motors, Inc., 197 Cal. App. 3d at 562 ("DLSE's primary responsibility is to interpret the intent of the IWC."). The Court declines to adopt an interpretation of Wage Order 9 that is contradicted by the Order's plain language and the judgment of the DLSE. Accordingly, the Court finds as a matter of law that the commission exemption does not apply to plaintiff's claims and GRANTS plaintiff's motion for summary judgment as to defendant's forty-sixth affirmative defense.

### C. Avis and Avis Budget

Defendants also assert that Avis and Avis Budget are entitled to summary judgment as a matter of law. Plaintiff does not respond to defendants' arguments.

The Court concludes that Avis is entitled to summary judgment as a matter of law. As defendants correctly point out, when this lawsuit was initially filed, it included plaintiffs who were operators under both the Avis and Budget systems. Defs' Mot. Summ. J. at 10. However, it is undisputed that plaintiff operated a Budget location and entered into an OA with Budget. Absent evidence of some form of relationship with Avis, plaintiff cannot prevail on her claims against that company. Accordingly, the Court GRANTS defendants' motion for summary judgment with regard to claims asserted against Avis.

On the contrary, the Court cannot conclude that Avis Budget is entitled to summary judgment as a matter of law. In support of their motion, defendants simply assert that plaintiff's SAC "does not allege any relationship with Avis Budget." Defs' Mot. Summ. J. at 10. By defendants' own admission, however, Budget had been a subsidiary of Avis Budget since 2006. SS No. 1. Moreover, defendants admit that Avis

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:11-cv-09992-CAS(AGRx) | Date | December 8, 2014 |
|---|---|---|---|
| Title | LUIGI AMBROSE ET AL. V. AVIS RENT A CAR SYSTEMS INC. ET AL. | | |

Budget sent a letter to plaintiff stating that "[c]ontinued poor performance . . . could force Avis Budget Group to exercise its rights signed by both parties in the operators agreement." SS No. 102 (emphasis added). In light of this evidence of a contractual relationship, the Court DENIES defendants' motion for summary judgment with regard to claims asserted against Avis Budget.

## V.    CONCLUSION

In accordance with the foregoing, the Court DENIES defendants' motion for summary judgment, insofar as it is based on the issue of whether plaintiff was an employee. Similarly, the Court DENIES plaintiff's motion for partial summary judgment, insofar as it is based on the issue of whether plaintiff was an employee.

The Court GRANTS plaintiff's motion for partial summary judgment as to defendant's forty-sixth affirmative defense.

The Court GRANTS defendants' motion for summary judgment with regard to claims asserted against Avis. However, the Court DENIES defendants' motion for summary judgment with regard to claims asserted against Avis Budget.

IT IS SO ORDERED.

|  | 00 | : | 18 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |